**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

| | |
|---|---|
| **KALSEC, INC.** | Case No. 1:23-cv-01137 |
| *Plaintiff,* | |
| | Judge: Hon. Jane M. Beckering |
| v. | |
| **FENCHEM, INC. d/b/a FENCHEM USA** | |
| *Defendant.* | |

### DEFENDANT'S FIRST AMENDED ANSWER TO PLAINTIFF'S COMPLAINT

Under Rule 15(a)(2) of the Federal Rules of Civil Procedure, Defendant FENCHEM, INC. ("Defendant"), by and through its attorney, files its First Amended Answer to Plaintiff's Complaint with Plaitniff's written consent on April ????, as follows:

### PARTIES, JURISDICTION, AND VENUE

1. Kalsec is a Michigan corporation with its principal place of business in Kalamazoo, Michigan.

**ANSWER:    Defendant neither admits nor denies the allegation in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

2. Fenchem is a California corporation with its principal place of business in Chino, California.

**ANSWER:    Admitted.**

3.      This Court has subject-matter jurisdiction over this Complaint pursuant to 28 U.S.C. § 1332 because complete diversity of citizenship exists between the parties, and the amount in controversy exceeds $75,000, exclusive of costs, interest, and attorney fees.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response. To the extent that a response is required, Defendant neither admits nor denies the allegation in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

4.      Kalsec and Fenchem regularly conduct business in Michigan generally and through the contract at issue.

**ANSWER:    Defendant admits that Fenchen has conducted business with Kalsec, but otherwise denies the allegations in this paragraph.**

5.      Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events giving rise to Kalsec's claims occurred in this district.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response. To the extent that a response is required, Defendant challenges venue at the Western District Court of Michigan.**

## FACTUAL BACKGROUND

6.      Kalsec is a leading producer of natural spice and herb flavor extracts, colors, antioxidants, and advanced hop products for the food and beverage industry.

**ANSWER:    Defendant neither admits nor denies the allegation in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

7. Fenchem is a global manufacturer of ingredients for various products, including food and beverage products.

**ANSWER:    Denied.**

8. Beginning in 2013, Kalsec, as buyer, and Fenchem, as seller, have entered into a series of contracts for the supply of tocopherols.

**ANSWER:    Defendant admitted that Kalsec has purchased tocopherols from Fenchem, but otherwise denies the allegations in this paragraph.**

9. Tocopherols are a family of compounds that make up different forms of vitamin E, a nutrient and antioxidant.

**ANSWER:    Admitted.**

10. Kalsec incorporates the tocopherols that it purchases from Fenchem into formulations that Kalsec supplies to customers in the food and beverage industry.

**ANSWER:    Defendant neither admits nor denies the allegation in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted. Defendant admits only that Kalsec purchased tocopherols from Fenchem.**

11. Kalsec has expended substantial effort and resources to develop a reputation as a reliable, timely supplier of products to its customers, including with respect to Kalsec's formulations containing tocopherols.

**ANSWER:    Defendant neither admits nor denies the allegation in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

12. Kalsec cannot quickly secure an alternative source for the tocopherols supplied by Fenchem at contracted prices because tocopherols are an agricultural product derived primarily

from soybean oil that is tied to agricultural crop cycles with accompanying price swings, and purchases are tied to commodity prices at the time of contracting.

**ANSWER:    Defendant neither admits nor denies the allegations in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

13.    The process for approving an alternative supplier for tocopherols also makes it difficult for Kalsec to secure replacement goods quickly. It takes Kalsec approximately two months to approve a new tocopherol supplier.: Furthermore, approval of a supplier only allows Kalsec to place an order for tocopherols. Lead times, production, and shipping can take additional months after a new supplier has been approved.

**ANSWER:    Defendant neither admits nor denies the allegations in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

14.    Accordingly, Fenchem's timely supply of tocopherols is critical for ensuring that Kalsec can both meet its obligations to its customers, with respect to both volume and price, and maintain its reputation as a timely supplier.

**ANSWER:    Defendant neither admits nor denies the allegations in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

15.    In early August 2021, Kalsec approached Fenchem about entering into a contract for the supply of Kalsec's anticipated needs for non-GMO mixed tocopherols 70% with sunflower oil (hereinafter, the "Tocopherols") for the following year, in the amount of approximately 35,000 kilograms ("kgs") of Tocopherols.

**ANSWER:** **Defendant admits that in early August 2021, Kalsec notified Fenchem that Kalsec was ready to order 35,000 kgs of tocopherols from Fenchem, but otherwise denies the allegations in this paragraph.**

16. The parties subsequently discussed by telephone and email Kalsec's proposal to purchase approximately 35,000 kgs of Tocopherols in the following year, and they ultimately agreed that Fenchem would supply 35,150 kgs of Tocopherols to Kalsec at the price of $31/kg (the "Agreement").

**ANSWER:** **Defendant admits that Fenchem and Kalsec disccused selling tocopherols to Kalsec, but otherwise denies the allegations in this paragraph.**

17. The parties' email correspondence between August 5, 2021 and August 11, 2021 evinces their agreement and mutual assent to be bound to the terms of the Agreement. (See Ex. 1, Email Correspondence; Ex. 2, PO 6013522.)

**ANSWER:** **The allegations in this paragraph are legal conclusions which require no response. To the extent an answer is required, Defendant admits that Fenchem received email correspondences and the purchase order 6013522 from Kalsec, but otherwise denies the allegations in this paragraph.**

18. In addition, both parties agreed to the terms of the Agreement orally, after which time Kalsec sent a written confirmation of the terms of the Agreement, to which Fenchem did not object. (See Ex. 1; Email Correspondence; Ex. 2, PO 6013522.)

**ANSWER:** **Defendant admits that Fenchem and Kalsec discussed selling tocopherols to Kalsec and that Fenchem received the purchase order 6013522 from Kalsec, but otherwise denies the allegations in this paragraph.**

19. The terms of the Agreement are memorialized in a purchase order, which includes the specific agreed-upon quantity of Tocopherols: (35,150 kgs), includes the agreed-upon price for those Tocopherols ($31/kg), contains various delivery terms (including delivery location, shipping method, and shipping terms), and provides that subsequent delivery orders will detail the specific dates for deliveries. (Ex. 2, PO 6013522.)

**ANSWER:** **Defendant admits that it received the purchase order no. 6013522 from Kalsec, and the document speaks for itself, but otherwise, Defendant denies the allegations in this paragraph.**

20. Near the start of the following year, on January 26, 2022, Kalsec reached out to Fenchem to "align on deliveries" for the Tocopherols subject to the Agreement.

**ANSWER:** **Defendant admits that Kalsec contacted Fenchem through email on January 26, 2022, but otherwise denies the allegations in this paragraph.**

21. In the same correspondence, Kalsec asked Fenchem if Fenchem had "more product [i.e., Tocopherols] available" and inquired regarding the possibility of ordering 10,000 to 20,000 kgs of "additional" Tocopherols that is, quantities additional to the 35,150 kgs of Tocopherols already subject to the Agreement.

**ANSWER:** **Defendant admits that Kalsec contacted Fenchem through email on January 26, 2022, but otherwise denies the allegations in this paragraph.**

22. The parties subsequently discussed pricing for the additional Tocopherols that Kalsec wished to purchase, and Fenchem indicated it was willing to sell additional Tocopherols at the price of $55/kg.

**ANSWER:** **Defendant admits that Fenchem and Kalsec discussed that Kalsec wished to purchase additional tocopherols from Fenchem at the price of $55/kg, but otherwise denies the allegations in this paragraph.**

23. On February 9, 2022, Kalsec informed Fenchem it was willing to "buy some additional volumes at the price of 55.00/kg" but was still working to confirm precise quantities for the additional volumes it wished to order.

**ANSWER:** **Defendant admits that it received an email from Kalsec on February 9, 2022, and the document speaks for itself.**

24. Two days after that, Kalsec emailed Fenchem two purchase orders, numbered 6016478 and 6016479, each for 4750 kgs of Tocopherols at $55.00/kg.

**ANSWER:** **Defendant admits that it received two purchase orders nos. 6016478 and 6016479 Kalsec, and the documents speak for themselves.**

25. Kalsec also asked Fenchem at this time if Fenchem would hold open the option for Kalsec to order an additional 5,000 kgs at the $55/kg price point.

**ANSWER:** **Defendant admits that it received an email from Kalsec, and the document speaks for itself.**

26. Fenchem responded that it could "make this work at the $55/kg price point on an additional 5,000kg" until February 16, 2022.

**ANSWER:** **Defendant admits that it discussed selling an additional 5,000kg of tocopherols to Kalsec through email, and the document speaks for itself.**

27. Kalsec responded that same day, by emailing a purchase order, numbered 6016531, for another 4750 kgs of Tocopherols at $55/kg.

**ANSWER:   Defendant admits that it received the purchase order no. 6016531 from Kalsec, and the document speaks for itself.**

28.   None of Kalsec's orders for Tocopherols at $55/kg replaced, modified, waived, or negated the Agreement in whole or in part. Rather, all of Kalsec's orders for Tocopherols at $55/kg covered Tocopherols additional to the Tocopherols subject to the Agreement, as Kalsec expressly explained to Fenchem. Kalsec also did not agree to modify or waive the Agreement at any other time.

**ANSWER:   Defendant admits that Kalsec wanted to order additional tocopherols from Fenchem by three purchase orders on the top of the purchase order no. 6013522, but otherwise denies all allegations in this paragraph.**

29.   The same week that Kalsec ordered these additional Tocopherols at $55/kg, Kalsec also issued, with respect to the 35,150 kgs of Tocopherols subject to the Agreement, purchase orders specifying the volumes per delivery, as contemplated under the Agreement.

**ANSWER:   Defendant admits that Kalsec sent three purchase orders to order additional tocopherols from Fenchem, and the documents speak for themselves, but otherwise, Defendant denies the allegations in this paragraph.**

30.   These purchase orders were numbered 6016488, 6016489, 6016490, 6016492; and 6016493, and called, respectively, for the delivery of the 35,150 kgs of Tocopherols as follows: 7600 kgs on March 31, 2022; 5700 kgs on April 29, 2022; 5700 kgs on June 30, 2022; 7600 kgs on September 30, 2022; and 8550 kgs on October 28, 2022.

**ANSWER:   Defendant lacks knowledge or information sufficient to form a belief about the truth of the allegations in this paragraph.**

31. In response to the purchase orders contemplated under the Agreement, Fenchem wrongfully and in direct breach of its contractual obligations threatened to withhold the Tocopherols, which Fenchem had previously agreed to supply to Kalsec under the Agreement, unless Kalsec acquiesced to extra-contractual price increases. Fenchem's threats and price-increase demands constituted material breaches of the Agreement.

**ANSWER:    Denied.**

32. After receiving the purchase orders specifying the volumes per delivery of the 35,150 kgs of Tocopherols subject to the Agreement, Fenchem denied its obligations to ship any Tocopherols at the price of $31/kg, claiming to Kalsec that, despite the Agreement, the lowest price Fenchem would supply Tocopherols to Kalsec would be at $55/kg.

**ANSWER:    Denied.**

33. Fenchem had no contractual basis to demand an increase in the agreed-upon price of Tocopherols from $31/kg to $55/kg.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response.**

34. Kalsec explained to Fenchem that Fenchem's price demands were contrary to the terms of the Agreement.

**ANSWER:    Denied.**

35. But Fenchem repeatedly refused to supply the Tocopherols subject to the Agreement at the agreed-upon pricing.

**ANSWER:    Denied.**

36. Indeed, soon after making its extra-contractual demands for a price increase to $55/kg, Fenchem raised its extra-contractual demands further, indicating it would not supply the Tocopherols subject to the Agreement unless Kalsec agreed to one of the following price options:

Option# :1 $62.00/kg (EXW-China) with 30% prepayment required prior to pickup.

Option# 2: $70.00/kg (FOB-my California warehouse) on a total of 13,300 kgs, with Delivery by AIR from China and therefore a prepayment of 50% required prior to departure due to the higher than usual related airfreight costs at this time…with an ETA to you of approximately 4-6 weeks due to factors outside of our control.

**ANSWER:    Defendant admits that it provided Kalsec with the price options if Kalsec would like to purchase additional tocopherols from Fenchem, and the document speaks for itself, but otherwise, Defendant denies the allegations in this paragraph.**

37. Fenchem had no contractual or legal basis for refusing to supply the Tocopherols subject to the Agreement unless Kalsec agreed to one of those options.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response. To the extent an answer is required, Defendant denies the allegation in this paragraph.**

38. Fenchem's price demands flouted the terms of the parties' Agreement because the demands were based on prices that Fenchem claimed reflected the current market prices, but the parties had already agreed on pricing without any price adjustment terms.

**ANSWER:    Denied.**

39. As Fenchem is aware, the downstream demand for Kalsec's formulations containing the Tocopherols and Kalsec's inability to quickly secure a replacement supplier, due to the supplier approval process and Tocopherols' being tied to agricultural crop cycles and the accompanying price swings, meant that Kalsec had little choice other than to accede to Fenchem's extra-contractual price demands.

**ANSWER:    Denied.**

40.     Fenchem's refusal to supply at the contracted prices constituted a breach of the Agreement.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response. To the extent an answer is required, Defendant denies the allegation in this paragraph.**

41.     Further, Fenchem's demand that Kalsec pay the higher prices also constituted a breach of the Agreement.

**ANSWER:    The allegations in this paragraph are legal conclusions that require no response. To the extent an answer is required, Defendant denies the allegation in this paragraph.**

42.     A delay in Fenchem's supply of Tocopherols would lead to production shutdowns resulting in substantial harm to Kalsec, including potential liability to Kalsec's customers and harm to Kalsec's goodwill and commercial reputation.

**ANSWER:    Defendant neither admits nor denies the allegations in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted.**

43.     To ensure uninterrupted supply of Tocopherols and to mitigate the damages that would have resulted from Fenchem's cessation of supply, Kalsec was left with no choice but to accept Fenchem's price increase demands under protest with full reservation of its rights and legal arguments, so Kalsec issued new purchase orders, which included the higher prices improperly demanded by Fenchem.

**ANSWER: Defendant neither admits nor denies the allegation that Kalsec was left with no choice in this paragraph due to lack of knowledge and information sufficient to form a belief as to the truth of the matter asserted. Defendant further denies the other allegations in this paragraph.**

44. Kalsec explained to Fenchem that it was ordering Tocopherols at $62/kg "under significant duress and under protest given Fenchem's unwillingness to meet the terms of our prior agreement." Kalsec further explained that, "[g]iven the downstream demand for our formulations containing this product," Kalsec had "little choice" other than to order Tocopherols at $62/kg, and that ordering Tocopherols at that price did not reflect an agreement "to replace or negate our original PO issued in August of last year."

**ANSWER: Defendant admits that it received an email from Kalsec, and the document speaks for itself, but otherwise, Defendant denies the allegations in this paragraph.**

45. Fenchem's failure to meet its contractual obligations ultimately forced Kalsec to purchase 18,050kgs of Tocopherols from Fenchem at a price of $62.00/kg, in purchase orders numbered 6016913, 6016914, and 6018936.

**ANSWER: Denied.**

46. Fenchem's failure to meet its contractual obligations also forced Kalsec to eventually engage an alternative supplier to supply 13,300 kgs of "cover" Tocopherols at a price of $62.00/kg.

**ANSWER: Denied.**

47. Kalsec suffered at least $971,850 in damages as a result of Fenchem's breach of the Agreement. Kalsec overpaid Fenchem for Tocopherols (under protest) after Fenchem threatened to cut off Kalsec's supply unless Kalsec agreed to Fenchem's improper price increase demands.

12

Fenchem's breach also required Kalsec to secure more expensive "cover" Tocopherols. As a result of Fenchem's breach, Kalsec ultimately purchased 31,350 kg of Tocopherols at $62/kg, rather than $31/kg, which was a difference in price totaling $971,850. Kalsec continues to investigate the total damages it suffered as a result of Fenchem's breach and reserves the right to supplement its damages calculations.

**ANSWER:** **Denied.**

## COUNT I - BREACH OF CONTRACT

48. Kalsec incorporates by reference in this Count I all preceding allegations of this Complaint.

**ANSWER:** **Defendant re-states and incorporates by reference its answers to all preceding allegations of this Complaint.**

49. The parties had a valid and mutually binding Agreement that required Fenchem to supply Kalsec with 35,150 kgs of Tocopherols at the price of $31/kg.

**ANSWER:** **The allegations in this paragraph are legal conclusions that require no response. To the extent an answer is required, Defendant admits that it received the purchase order no. 6013522 from Kalsec, but otherwise denies the allegations in this paragraph.**

50. Fenchem is bound by the obligations set forth in the Agreement.

**ANSWER:** **The allegations in this paragraph are legal conclusions that require no response. To the extent an answer is required, Defendant admits that it received the purchase order no. 6013522 from Kalsec, but otherwise denies the allegations in this paragraph.**

51. Kalsec fulfilled its obligations under the Agreement.

**ANSWER:** **Denied.**

52. Fenchem breached the Agreement when it refused to ship the Tocopherols to Kalsec unless Kalsec agreed to extra-contractual price increases.

**ANSWER:    Denied.**

53. As a direct and proximate result of Fenchem's breaches of the Agreement, Kalsec has incurred substantial damages.

**ANSWER:    Denied.**

## DEFENDANT'S SPECIAL AND/OR AFFIRMATIVE DEFENSES

Defendant FENCHEM, INC. D/B/A FENCHEM USA, by and through its attorney, and under FED. R. CIV. P. 8(c) for its Special and/or Affirmative Defenses states:

1. Plaintiff's complaint fails to state a claim upon which relief may be granted.

2. Plaintiff's claim is barred by accord and satisfaction.

3. Plaintiff's claim is barred by estoppel.

4. Plaintiff's claim is barred by release.

5. Plaintiff's claim is barred by laches.

6. Plaintiff's claim is barred by commercial impracticability under UCC 2-615 and/or MCL 440.2615.

7. Plainitff's claim is barred by its failure to mitigate damages due to its avoidance and ignorance of Defendant's good faith communication to resolve their disputes via email correspondences and phone calls.

8. To the extent an assertion contained in any of the above answers constitutes an affirmative defense, the same is incorporated by reference as if fully set forth herein.

9. Defendant reserves the right to amend and add affirmative defenses.

WHEREFORE, PREMISES CONSIDERED, Defendant requests that this Court dismisses the Complaint, with prejudice, and award Defendant its costs and attorney's fees associated with defending this lawsuit.

DATED: July 30, 2024

                                                  Respectfully submitted,

                                                  **MINGWEI YAN, PLLC**

By: */s/ Mingwei Yan*
     Mingwei Yan (P80734)
     455 E. Eisenhower Parkway
     Suite 300,
     Ann Arbor, Michigan 48108
     (732) 800-9912
     yanpllclaw@gmail.com

*COUNSEL FOR DEFENDANT*

## CERTIFICATE OF SERVICE

I hereby certify that on July 30, 2024, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

**MINGWEI YAN, PLLC**

*/s/ Mingwei Yan*
Mingwei Yan (P80734)
455 E. Eisenhower Parkway
Suite 300,
Ann Arbor, Michigan 48108
(732) 800-9912
yanpllclaw@gmail.com

*COUNSEL FOR DEFENDANT*